## *In re* NEI KAMARAWA.

### HABEAS CORPUS.   BEFORE JUDD, C.J.

### JANUARY, 1883.

In the absence of an adoption in writing, held, that parents who gave their child to other parties, had not parted with their right of custody of the child.

But it appearing that the child was unwilling to go back to her parents: that it would not be to her advantage to do so: and that she had reached an age where she was capable of exercising a sound discretion: the Court declines to order her to the custody of her parents.

### DECISION OF JUDD, C.J.

It appears that in December, 1879, on the arrival of a number of Gilbert Islanders to the Board of Immigration, a married couple among them, Ti Tau and Toaua, from Apaiang, gave

their daughter to a Hawaiian woman, Kealoha, and her husband, Makanui. The Gilbert Islanders understood that they were binding their child for three years, or until their indenture of labor here should expire, and it was so interpreted to them by a Hawaiian named Kaikala who had learned the language.

The Hawaiian foster-parents understood that the child was given to them absolutely. The Secretary of the Board of Immigration so understood the bargain, and had it so interpreted to the people through a Mr. Holland, who is not now in this Kingdom, and cannot give his evidence.

The parents left soon after for a residence on the Kilauea Plantation, on Kauai, and only returned to Honolulu a week ago. On going to where their child was, they found that the Hawaiian foster-parents would not surrender her, and also that the child was unwilling to go back to them. The Hawaiians demanded to be paid back $300 as their expenses for maintaining the child during these three years. The father, Ti Tau, then applied to this Court for a writ of *habeas corpus,* and the child was produced in Court and a hearing was had. The child appears to have been well cared for, clothed and educated by her foster-parents, is happy with them, speaks the Hawaiian language fluently, and assumed to have forgotten her native tongue, but it was evident that she still understood it. Her long residence with her foster-parents, having had no communication with her own parents meanwhile, has caused the child's affections to be thoroughly alienated from her parents, who, however, profess strong love for their child, which is apparently sincere, and are very desirous that she return with them to their native land.

It is the custom among the Gilbert Islanders to lend their children to friends, but not to give them by adoption of other parents, and on marriage, however young, the parents cease to have control over their daughter. No articles of adoption were made in this case.

I am clear that in the absence of an adoption in writing according to our law, the parents have not parted with their right of custody over their child.

Should I then grant the writ and remand the child to the custody of her parents to be taken back to the Gilbert Islands?

Chancellor Kent says: "The father may obtain the custody of his children by the writ of *habeas corpus* when they are improperly detained from him; but the Courts, both of law and equity, will investigate the circumstances, and according to sound discretion, and will not always and of course interfere upon *habeas corpus* and take a child, though under fourteen years of age, from the possession of a third person and deliver it over to the father against the will of the child." They will consult the inclination of an infant, if it be of sufficiently mature age to judge for itself, and even control the right of the father to the possession and education of his child, when the nature of the case appears to warrant it. 2 Kent's Com., 194.

It is a general principle also, that the Court is not bound to deliver the child into the custody of a claimant, or of any other person, but may leave it in such custody as the welfare of the child at the time appears to require; and in all cases if the child has arrived at the age of discretion, it will be permitted to elect in whose custody it will remain, provided its choice, under the circumstances, does not, in the opinion of the Court, lead to improper custody. Hurd, Habeas Corpus, p. 461.

It has been well said that the "welfare of the infant is the polar star by which the discretion of the Court is to be guided." *Ibid.* 632.

When the parent has voluntarily parted with the custody and seeks to recover it, if his right to recover it be doubtful or the assertion of the claim would be inequitable to others or injurious to the child, or if no legal right to the custody be preferred by anyone, the reasonable wishes of the child should be allowed a controlling influence. *Ibid.* 533.

In *Rex vs. Delaval*, 3 Burr., 1436, Lord Mansfield said: "The Court is bound *ex debito justitiae* to set the infants free from an improper restraint, but they are not bound to deliver them over to anybody or give them any privilege."

The Court must judge for itself as to whether the child is

capable of exercising a sound discretion, and there is no arbitrary and fixed age at which a child's inclination is to be consulted, and I find that infants have been allowed to exercise their discretion from nine years old and upwards. Chief Justice Shaw said, in *Pool vs. Gott*, 14 Law Reports, 269: "There is no doubt that the father is *prima facie* entitled to the custody of his child. But this is not an absolute right. It may be controlled by other considerations. If unable or unfit to take charge of the child and educate it in a suitable manner, the Court will not interfere to take the child from the care of persons who are fit and able to maintain and educate it properly."

This was a case in which the child was a girl of thirteen years, and the Court declined to order her from the custody of her grand-parents, with whom she had been living nearly all her life, to that of her own father, though in a good situation, pecuniary, domestic and social, and of good character, on the ground that he had permitted, by his acquiescence in the child's long residence away from him, the affections on both sides to be engaged, and a state of things to arise which could not be altered without risking the happiness and interest of the child.

This case bears so close an analogy to the one at bar and is from so high an authority, that I regard it as conclusive.

I am of opinion that the infant in this case has reached the age when she is capable of exercising a sound discretion, and she has shown a strong desire not to return to the Gilbert Islands. Therefore, to compel her to do so would be at the risk of her happiness, and it is manifestly not to her advantage to do so.

I therefore decline to order her to the custody of her father. She may go free.

*W. R. Castle*, for petitioner.

Honolulu, January 10th, 1883.