# ARTHUR EDWIN RESTARICK v. FLORIA L. RESTARICK.

## No. 1656.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. R. DESHA, JUDGE.

SUBMITTED APRIL 8, 1926.　　　　　　DECIDED APRIL 17, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

DIVORCE—*custody of children—welfare of child.*

In deciding questions concerning the custody of children of divorced people the paramount consideration is the welfare of the child. The rights of the parents when they come in conflict with the welfare of the child must yield to the latter.

SAME—*same—access to children.*

Sometimes, and perhaps in most instances, it is possible for courts, consistently with the welfare of the child, to yield to the dictates of humanity in permitting the parent to whom the general custody is denied certain rights of visitation and companionship.

OPINION OF THE COURT BY PERRY, C. J.

The libellant commenced a suit for divorce on January 11, 1923, based on the ground of extreme cruelty and alleging that for more than a year then last past libellee had neglected her home and their child, a boy, Henry, then nearly four years of age, had refused to be in the company of the libellant and had constantly and in opposition to libellant's known wishes on the subject been in company with a man named; that by letter and orally libellee had informed libellant that she did not care to live further with him but was in love with the other person named and that they would be married as soon as possible; and that the libellee's conduct had caused the libellant worry, humiliation and impairment of

health.   The prayer of the libel was not only that the
bonds of matrimony be dissolved but also that the custody
of the child be awarded to the libellant.   The libellee did
not file an answer or make any appearance but suffered
the proceedings to go by default.   A decree was entered,
as prayed for, on February 12, 1923, dissolving the mar-
riage and awarding absolutely to the libellant the custody
of the minor child.   On May 29, 1923, upon written stip-
ulation of the parties an amended decree was filed re-
affirming the award of the child to the libellant but mak-
ing that award "subject, however, to the right of said
libellee to have the custody of said child between the
hours of 9:00 A. M. and 4:00 P. M. on one day of each
week, convenient to said libellant and said libellee" and
containing the further provision that the minor child be
not taken from the jurisdiction by the libellant without
the previous permission of the court after notice to the
libellee.   At the time of the entry of the amended decree
the child was not attending school.   Subsequently he was
placed in school, his required attendance at first being
until eleven o'clock in the morning of each school day
and later until noon.   The parties agreed upon Wednes-
day of each week as the day upon which the mother
should take the child into her company.   At first she had
it from 9 A. M. to 4 P. M. of each day.   Then when the
child first attended school she had it from 11 A. M. to
5:30 P. M. and still later from noon until 5:30 P. M.   On
January 20, 1925, the libellee filed a petition to modify
the decree "so as to provide that she may have the cus-
tody of said child each week from noon on Friday till
6 o'clock P. M. on Saturday, and during the entire time
during every regular school vacation."   This application
was resisted by the libellant who filed a cross-petition
requesting that the amended decree be further amended
so as to award the absolute custody to him without any

definite legal right in the libellee to have the company of the child.    After taking evidence the trial judge denied the libellee's petition and granted the libellant's cross-petition entering a decree in conformity with the latter.

Since the entry of the original decree the libellee has married the man named in the libel.    The libellant has not married.    Ever since the decree the child has lived in the home of Mr. and Mrs. Reynold McGrew, while the libellant has occupied a cottage on the same premises. Mrs. McGrew is a sister of the libellant.    At times the child has slept in the cottage with his father.    The McGrews have two children, a little girl aged nine and an infant.    Henry has been in all ways treated as a member of the McGrew household, his father, however, devoting to him all of the time available outside of his business duties. The school attended by Henry is a rather small, select institution, the other pupils being in every way desirable companions for Henry.    Without reciting the evidence in detail, we are entirely satisfied that the libellant and Mrs. McGrew have at all times treated the child as careful, intelligent and loving parents should; that all the other members of the household likewise have treated him in most kindly manner; and that his physical, mental and moral well-being have been at all times and in all respects sustained and promoted by the libellant and those under him.    The libellant's father, grandfather of Henry, is a retired bishop of the Episcopal church. The libellant and the libellee are both Episcopalians. The child's grandfather and grandmother have rendered much assistance in his religious training.    Henry's health is good.    His progress at school is excellent and he is a well-mannered boy.    On the other hand, there is nothing in the evidence, other than in the history of the divorce case, reflecting upon the character of the libellee or her

attitude towards the child,—with the exceptions here-inafter mentioned.

The appeal now before us is from the latest decree, but only in so far as it relates to the custody of the child. There is no attempt under the appeal to have the general custody of the child taken from the father and reposed in the mother. The only request is that the libellee be permitted to have the child in her company at the times mentioned in the petition and above recited. The law that is applicable in such a case as this is well settled. In deciding questions concerning the custody of children of divorced people, the paramount consideration, as has been often stated in other jurisdictions and in this one, is the welfare of the child. The rights of the parents when they come in conflict with the welfare of the child must yield to the latter. See, for example, *In re Nei Kamarawa*, 6 Haw. 386, 388; *Wong* v. *Wong,* 27 Haw. 742, 744; *Dimmitt* v. *Dimmitt,* 150 S. W. (Mo.) 1107, 1111; *Burton* v. *Burton,* 211 S. W. (Ky.) 869, 871; *Hill* v. *Hill,* 33 Am. Rep. (Md.) 271, 276, and *Davis* v. *Davis,* 131 S. W. (Ky.) 266, 267. There seems to be no conflict in the authorities in the statement of the rule. Apparent conflicts appear in its application but that is due largely if not wholly to the varying circumstances of the different cases. Ordinarily, as in the case at bar, the custody of the child is awarded to the parent who is not at fault, although this rule is sometimes departed from in the cases of children of tender years and particularly little girls, in which latter instances the mother if otherwise of good character is favored. Sometimes, however, and perhaps in most instances, it is possible for courts to yield to the dictates of humanity in permitting the parent to whom the general custody is denied certain rights of visitation and companionship. *Random* v. *Random,* 170 N. W. (N. D.) 313, 314; *Schlarb* v. *Schlarb,*

150 N. W. (Ia.) 593, 596; *Wilkins* v. *Wilkins,* 120 N. W. (Neb.) 907, 908; *McClain* v. *McClain,* 202 Pac. (Wash.) 173, 174; *Kane* v. *Kane,* 165 Pac. (Mont.) 457, 459. In those instances such yielding is deemed not to be inconsistent with the welfare of the child. Beyond such general observations as these it is impossible to lay down any inflexible rule to apply in all cases. In each case the particular circumstances must be considered.

Some trial has been given in this case to the arrangement whereby, although the father has the general custody of the child, the mother is permitted to have him with her on one day of each week. As a result of that experiment there is some evidence before us to the effect that on two or three occasions Henry has returned from the visits to his mother ill, apparently from an upset stomach, and that he developed chicken pox on the day following one of the visits; also that after each visit Henry "has come home bold and undisciplined, nervous and won't mind" and that "it takes a day or so to get him back to mind me" (the father) "or Mrs. McGrew;" also that at the libellee's home the libellee told him that "she had more money than Mrs. McGrew and could give him more presents than his own daddy could," and that he was asked not to tell his father that they, the libellee and her husband, called him "Allan" instead of "Henry" and that thereby he was taught disloyalty and dissimulation. These charges are denied by the libellee.

We think that an amended decree should be entered which, while leaving the general custody of the child in the father, will permit the mother to have him with her on each Saturday from 9 A. M. to 4 P. M.,—until further order of the court. The case is remanded to the trial court with instructions to that effect. In so ordering we confess that we are not entirely free from misgivings as to whether such a modified custody is for the best

interests of the child.  Either party is at liberty to ask at any time for a modification of the decree about to be entered.   The mother can by her conduct hereafter towards the child show that our present judgment is correct.   If, on the other hand, experience shall teach, and it shall be so shown to the court by evidence, that the visits are harmful to the child and not in its best interests the provisions in favor of the mother can be rescinded.

The decree should further prohibit the removal of the child from this jurisdiction by either parent without permission of the court after notice to the other parent.

*Thompson, Cathcart & Beebe* for libellant.

*Robertson & Castle* for libellee.

